593 So.2d 1113 (1992)
Derward OWENS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2177.
District Court of Appeal of Florida, First District.
January 31, 1992.
Rehearing Denied March 4, 1992.
*1114 James P. Judkins of Davis, Judkins & Simpson, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., for appellee.
KAHN, Judge.
Derward Owens, a former County Commissioner in Walton County, appeals his convictions for petit theft, grand theft, and official misconduct. We affirm the theft convictions[1] and reverse the official misconduct conviction, remanding for a new trial.
Mr. Owens was apparently a strong believer in the concept of hands-on government. On January 13, 1987, he obtained permission from his fellow County Commissioners to go to northern Kentucky to inspect and purchase three items of heavy construction equipment.[2] The minutes of the County Commission meeting for that date memorialize such a delegation of authority to Owens and include no restrictions on Owens' authority to act on behalf of Walton County. Owens, apparently acting as his own staff, contacted Walton County's shop foreman, George Montgomery, and instructed Mr. Montgomery to have the county-owned lowboy serviced, fueled and ready for a long trip. According to Montgomery's testimony, Owens made such a request on three occasions. Owens' request to the county shop to have the lowboy fueled up on three occasions was confirmed by Mr. Laird, another county employee. According to Laird, Owens gave instructions on three separate Thursday afternoons that Laird fuel the lowboy and leave it parked outside the gate.
The County Commission authorized Owens to purchase three pieces of equipment. The undisputed evidence in this record indicates that Owens instructed Harold Lee Petty, a heavy equipment operator for the county, to make five trips to Anna, Illinois for the purpose of picking up equipment. On each trip, Mr. Petty would pick up the county lowboy fully fueled, would drive north where he refueled and picked up the equipment, and would return the lowboy to the county yard empty.
It turns out that the county actually purchased the three pieces of equipment from a local Walton County firm known as B & H Earth Moving Contractors (B & H), through its principal, Clifton Hall. It was actually B & H that purchased the equipment in Anna, Illinois. According to Owens, the deal he struck with B & H was that the county would provide the lowboy, one driver, and pay half the fuel expenses. B & H would provide one driver, pay half the fuel expenses, and also pay the county's driver any overtime pay required by the trips. It is at this point in the factual scenario that Mr. Owens' problems begin to develop.
B & H arranged to purchase eight pieces of heavy equipment from a firm known as Denny & Sons in Illinois. The agreed price for these eight pieces of equipment was *1115 $59,500.00. Three of these eight pieces of equipment were the machines that the county authorized Mr. Owens to purchase. The crucial aspect of the deal between Owens and B & H, for the purposes of this case, was that Owens agreed with B & H that Walton County would pay $58,500.00 for the three pieces of equipment desired by the county. It was undisputed that the three pieces of equipment desired by the county could have been hauled in either two or three trips, and further undisputed that a county driver, aboard county equipment, made a total of five trips, at least partially on county time.
In support of the theft charges comprising Count I of the indictment, the state presented evidence that Owens obtained reimbursement for expenses, including fuel charges and a towing and repair charge for the lowboy, to which he was not entitled. In support of the theft charges in Count II, the evidence from the prosecution showed that Owens procured for his own benefit the use of a county truck, driver, and fuel for trips that had nothing to do with fulfilling his legitimate purpose of obtaining three pieces of equipment. We find that the evidence is sufficient to support these convictions and further hold that Owens is not protected from prosecution by the county's general delegation to him of authority to purchase three pieces of machinery. Nothing in the minutes of the County Commission meeting, entered into evidence during the trial, indicates that Owens was authorized to conduct personal business on his behalf, or on behalf of his friend, Mr. Hall, part and parcel to fulfilling the official county purpose of obtaining three pieces of equipment. Even were we to agree that the county's grant of authority implicitly carried with it authorization for Owens to make certain arrangements incidental to, but not expressly included in, the grant of authority, we would not be persuaded. Mr. Owens' determination, undisclosed to his fellow commissioners, to utilize county personnel, supplies, and equipment in order to provide B & H with five valuable pieces of machinery, at a cost to B & H of $1,000.00, did not reasonably fall within the Commission's delegation to Owens. Accordingly, the convictions on Counts I and II are affirmed.
As to Count III, the indictment charged:
that DERWARD OWENS between January 13, 1987 and February 28, 1987, in Walton County, Florida, did unlawfully as a public servant, a Walton County Commissioner, and with corrupt intent to obtain a benefit for himself or for CLIFTON HALL d/b/a B & H EARTH MOVING CONTRACTORS, cause Walton County employees to use a county vehicle for private purposes contrary to duties imposed upon him by law or did knowingly falsify official records or documents, vouchers for reimbursement for travel, mileage, wrecker service, fuel or repairs, contrary to Section 839.25, Florida Statutes.
By § 839.25, Florida Statutes (1987), official misconduct is defined as follows:
(1) `Official misconduct' means the commission of one of the following acts by a public servant, with corrupt intent to obtain a benefit for himself or another or to cause unlawful harm to another:
(a) Knowingly refraining, or causing another to refrain, from performing a duty imposed upon him by law; or
(b) Knowingly falsifying, or causing another to falsify, any official record or official document.
In State v. Jenkins, 469 So.2d 733 (Fla. 1985), the supreme court held that subsection (a) of the statute, prohibiting a public servant from "[k]nowingly refraining, or causing another to refrain from performing a duty imposed upon him by law" is unconstitutionally vague and does not therefore describe an act that can be criminally proscribed by statute. Subsection (1)(b) of the statute, prohibiting falsification of official records or documents, is, however, constitutional. State v. Riley, 381 So.2d 1359 (Fla. 1980). Despite the attempts of the state to persuade us otherwise, it is clear that the grand jury charged Owens under both subsections of the statute. The fact that the charge was made in the alternative does not avail the state, since when it came *1116 time to instruct the jury, the circuit court charged on Count III as follows:
`Official misconduct' means the commission of one of the following acts by a public servant with corrupt intent to obtain a benefit for himself or another or to cause unlawful harm to another: Knowingly refraining or causing another to refrain from performing a duty imposed upon him by law; or knowingly falsifying or causing another to falsify any official record or official document.
The state now argues that the record contains sufficient evidence to support a conviction under the knowing falsification provision of the statute. While we are inclined to agree with this proposition, it does not mend the infirmity caused by the indictment and the jury instruction. In Bashans v. State, 388 So.2d 1303 (Fla. 1st DCA 1980), this court, relying upon McGahagin v. State, 17 Fla. 665 (1880), considered an indictment that charged two separate offenses in the same count. The jury in Bashans, as did the jury in the present case, returned a general verdict of guilty of the count, commingling the two separate charges. Relying upon the venerable precedent of McGahagin, this court concluded that such a verdict and judgment cannot stand as it cannot be determined which of the alleged offenses the jury found the defendant guilty of having committed.[3]
It is most difficult to understand how, in this day and age, this case could have proceeded through the indictment stage, to pretrial matters, and on to trial, verdict, and posttrial motions, without either the state or the defense ever recognizing that Mr. Owens was being charged under a statute that had been previously declared unconstitutional by the highest court in this state. Since the error is fundamental, Bashans, supra, however, we are constrained to reverse Owens' conviction as to Count III and remand for a new trial on the charge of official misconduct.
ERVIN and WEBSTER, JJ., concur.
NOTES
[1] The theft counts charged as follows:

that DERWARD OWENS between January 13, 1987 and February 28, 1987, in Walton County, Florida, did knowingly obtain, use, or did endeavor to obtain or to use UNITED STATES CURRENCY of the value of $300 or more, the property of WALTON COUNTY, with the intent to temporarily or permanently deprive the county of a right to the currency or a benefit therefrom or to appropriate the currency to his own use, contrary to Section 812.014, Florida Statutes.
And your Grand Jurors further present that DERWARD OWENS between January 13, 1987 and February 28, 1987, in Walton County, Florida, did knowingly obtain, use, or did endeavor to obtain or to use TRUCK TRANSPORT SERVICES, REPAIRS, DRIVER LABOR, and/or FUEL of the value of $300 or more, the property of WALTON COUNTY, with the intent to temporarily or permanently deprive the county of a right to the services or property or a benefit therefrom or to appropriate the property or services to his own use or to the use of CLIFTON HALL d/b/a B & H EARTH MOVING CONTRACTORS, contrary to Section 812.014, Florida Statutes.
As to Count I, the jury found Owens guilty of the lesser included offense of petit theft.
[2] The purchase actually occurred in Anna, Illinois. The geographical disparity is of no import.
[3] We are unable to conclude that this is simply a case where a single crime can be committed in alternative ways and the indictment charges alternatively several acts, any one of which would support a guilty verdict for the one offense. The effect of Jenkins, supra, is to leave only one way in which the crime of official misconduct may be committed.